NOT FOR PUBLICATION                                    (Docket No. 19, 27)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

_____
                                        :
JULIO ALVAREZ, JR.,                     :
                                        :
            Plaintiff,                   :        Civil No. 07-346 (RBK)
                                        :
      v.                                :        **OPINION**
                                        :
COUNTY OF CUMBERLAND, et al,            :
                                        :
            Defendants.                  :
_____:

**KUGLER**, United States District Judge:

      This matter comes before the Court on a motion by Defendants County of Cumberland,

Cumberland County Board of Chosen Freeholders, Cumberland County Department of

Corrections, Cumberland County Sheriff's Department, Kenneth Lamcken, Michael Palau, Glenn

Saunders, and Lewis Walker (collectively, "the County Defendants") for partial summary

judgment on the Complaint of Plaintiff Julio Alvarez, Jr. ("Plaintiff") and on a motion by

Defendant Prison Health Services, Inc. ("PHS") for summary judgment on Plaintiff's Complaint.

Plaintiff's Complaint includes allegations that the County Defendants and PHS acted negligently

and violated Plaintiff's civil rights pursuant to 42 U.S.C. §§ 1983, 1985(3).  The County

Defendants only move for summary judgment on Plaintiff's civil rights claims against them.  For

the reasons expressed below, the Court will grant in part and deny in part the County Defendants'

motion and grant Prison Health Services' motion.

1

**I.      BACKGROUND**

The allegations in Plaintiff's Complaint arise from events that occurred while he was an inmate at the Cumberland County Correctional Facility ("Cumberland County Jail").  Plaintiff was placed in an isolation unit at the Cumberland County Jail on or about January 28, 2005 and released from isolation on or about February 2, 2005.  Plaintiff's isolation cell measured six feet by eight feet and was the middle cell in a group of three adjacent isolation cells in the unit.  The cells on either side of Plaintiff's had working toilets and sinks.  However, the parties agree that the toilet and sink in Plaintiff's original cell was in a state of disrepair at the time of his placement in isolation.  Other inmates occupied the adjacent isolations cells, which contained working toilets and sinks.  For the purposes of summary judgment, the parties agree that Plaintiff's toilet in isolation was not only non-functional, but also filled to the point of overflowing with urine, feces, and trash.

While in his original isolation cell, Plaintiff urinated in a Styrofoam cup which he then emptied into the broken sink so as not to cause the toilet to overflow onto the floor.  Plaintiff defecated in the toilet, only after removing from it pieces of plastic and cardboard, which he placed on the floor of the cell.  Plaintiff used the toilet by squatting over it, attempting to avoid touching the toilet seat.

Plaintiff was not provided with cleaning products with which to clean the isolation cell himself, nor was it cleaned by someone else while Plaintiff occupied it.  Plaintiff was not provided equipment to use to empty the toilet or sink.  At one time during his stay, a corrections officer did attempt to fix the toilet but was unsuccessful.  Plaintiff did not ask to use a toilet outside his cell.  Plaintiff alleges, and the County Defendants refute, that he did not ask because

2

there was not a guard available to whom Plaintiff could have made such a request.  Plaintiff was allowed to shower twice during his time in the original cell.  The County Defendants argue that Plaintiff had frequent access to corrections officer, including at the time of his showers.

Plaintiff contends that on February 1, 2005, one day before he was released from isolation, he transferred himself, with the permission of the guards, to an adjacent isolation cell with working plumbing.  Plaintiff further contends that he could not have moved to an adjacent cell until February 1 because both adjacent cells were occupied from the time of Plaintiff's arrival in the isolation unit until that date.  The County Defendants do not agree to the date of Plaintiff's self-transfer, but agree that he did so at some point during the time he was in isolation.

Plaintiff was released from isolation on February 2, 2005, at which time he was seen by a nurse to be treated for boils.  He was seen by a doctor on February 4, 2005, at which time he had developed 10 lesions over his buttocks, legs, and penis.  Plaintiff was placed in a medical isolation cell with other prisoners until February 9, 2005 when he was sent to the hospital to be treated for his lesions.  Plaintiff stayed at the hospital eight days and underwent surgery. Plaintiff's medical expert reports that Plaintiff was infected with methicillin-resistant staphylococcus aureus ("MRSA") at least in part due to his exposure to waste matter in his isolation cell and his inability to wash after touching contaminated surfaces.  (Pl. Opp. Ex. B.)

Plaintiff and the County Defendants agree that in 2005, the Cumberland County Jail was overcrowded.  Further, Plaintiff presents the deposition testimony of Defendant Kenneth Lamcken, who was responsible for maintenance at the Cumberland County Jail in 2005. Lamcken testified that there were times in 2005 when toilets in isolation units were broken, but that inmates were placed in cells with broken toilets.  He further testified that those inmates often

defecated on the floor of the cell.  (Pl. Opp. Ex. C.)  The County Defendants do not contest

Lamcken's testimony in their reply brief.

## II.    LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330, 106 S. Ct. 2548, 91 L.

Ed. 2d 265 (1986).  A genuine issue of material fact exists only if "the evidence is such that a

reasonable jury could find for the non-moving party."  Anderson v. Liberty Lobby, Inc, 477 U.S.

242, 248 (1986).  When the Court weighs the evidence presented by the parties, "[t]he evidence

of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her]favor."

Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving

for summary judgment. Celotex, 477 U.S. at 330.  The moving party may satisfy this burden by

either (1) submitting affirmative evidence that negates an essential element of the nonmoving

party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is

insufficient to establish an essential element of the nonmoving party's case.  Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth

specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  To do so, the

nonmoving party must "do more than simply show that there is some metaphysical doubt as to

material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to

establish the existence of [every] element essential to that party's case, and on which that party

will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## III.   ANALYSIS

### A.   The County Defendants' Motion

The County Defendants move for partial summary judgment on Plaintiff's constitutional claims against the County Defendants in Count IV of the Complaint.

#### 1.   Plaintiff's Fifth Amendment Claim

Plaintiff's Fifth Amendment claim does not present a genuine issue for trial and will be dismissed. The County Defendants move for summary judgment on Plaintiff's claim that they violated his constitutional rights guaranteed under the Fifth Amendment, contending that there is no genuine issue of material fact regarding a Fifth Amendment violation because Plaintiff has no evidence to support such a claim. Plaintiff has provided no argument to refute the motion on this point and thus presents no evidence to satisfy his burden. See Fed. R. Civ. P. 56(e). Finding no genuine issue of material fact, the Court will grant summary judgment for the County Defendants on Plaintiff's Fifth Amendment claim.

#### 2.   Plaintiff's Eighth Amendment Claim

The County Defendants move for summary judgment on Plaintiff's claim that they violated his Eighth Amendment rights. There are genuine issues of fact regarding the conditions of Plaintiff's confinement at the Cumberland County Jail, so Plaintiff's Eighth Amendment claims will survive summary judgment.

"To state a claim under [42 U.S.C.] § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487

U.S. 42, 48 (1988).  Prisoners have a protected right in being incarcerated at a place of confinement conforming to the standards set forth by the Eighth Amendment. The Constitution "does not mandate comfortable prisons," Rhodes v. Chapman, 452 U.S. 337, 349 (1981), but neither does it permit inhumane ones, and it is now settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993).  In its prohibition of "cruel and unusual punishments, the Eighth Amendment . . . imposes duties on [prison] officials, who must provide humane reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984); see Helling, 509 U.S. at 31-32; Washington v. Harper, 494 U.S. 210, 225 (1990); Estelle v. Gamble, 429 U.S. 97, 103 (1976).  The Eighth Amendment prohibits conditions which involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment.  Rhodes, 452 U.S. at 346, 347.  The cruel and unusual punishment standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society." Rhodes, 452 U.S. at 346 (quoting Trop v. Dulles, 356 U.S. 86, 101 (1958)).

To state a claim under the Eighth Amendment, an inmate's allegation must include both an objective and a subjective component.  See Wilson v.. Seiter, 501 U.S. 294, 298 (1991).  The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities" . . . are sufficiently grave to form the basis of an Eighth Amendment violation."  Helling, 509 U.S. at 32 (quoting Rhodes, 452 U.S. at 346).  This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim.  Hudson v.

6

McMillian, 503 U.S. 1, 9 (1992).  The subjective component requires that the state actor have

acted with "deliberate indifference," a state of mind equivalent to a reckless disregard of a known

risk of harm.  Farmer v. Brennan, 511 U.S. 825, 835 (1994); Wilson, 501 U.S. at 303.

     To satisfy the objective component of an Eighth Amendment conditions of confinement

claim, Plaintiff must show that the conditions alleged, either alone or in combination, deprive

him of "the minimal civilized measure of life's necessities," such as adequate food, clothing,

shelter, sanitation, medical care, and personal safety.  See Rhodes, 452 U.S. at 347-48; Young v.

Quinlan, 960 F.2d 351, 364 (3d Cir. 1992).  To the extent that certain conditions are only

"restrictive" or "harsh," they are merely part of the penalty that criminal offenders pay for their

offenses against society.  See Rhodes, 452 at 347.  An inmate may fulfill the subjective element

of such a claim by demonstrating that prison officials knew of such substandard conditions and

"acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or

safety." Ingalls v. Florio, 968 F. Supp. 193, 198 (D.N.J. 1997).  An official "must both be aware

of facts from which the inference could be drawn that a substantial risk of serious harm exists,

and he must also draw the inference."  Farmer, 511 U.S. at 837.

     In Young, the Third Circuit reversed the district court, which granted summary judgment

for the defendant on plaintiff's claims regarding the conditions of his confinement.  See Young,

960 F.2d at 353.  In that case, Young was a federal prisoner who allegedly suffered continuous

physical and psychological abuse by his cellmates.  Id. at 353-54.  In response to threats from one

cellmate, Young stopped up his cell toilet, consequently flooding the cell.  Id. at 355.  As

punishment, Young was placed in a dry cell, one without a toilet or running water, for ninety-six

hours.  Id.  In addition, Young was not provided with toilet paper.  Id.  During the first twenty-

nine hours of his confinement in the dry cell, Young asked repeatedly for a urinal and for

permission to leave his cell to defecate.  Id.  Not receiving same, Young relieved himself in his

cell.  Id.  Young was finally provided with a urinal and allowed to leave his cell to defecate, only

after having been confined in the dry cell for twenty-nine hours.  Id.  The following day, Young

again requested permission to leave his cell to defecate, but his requests were ignored or rejected.

Id.

When the Third Circuit considered whether Young had raised a genuine question of fact

regarding the constitutionality of his confinement, it applied the standard described supra.  Id. at

360.  Specifically, the court noted that "inhumane prison conditions, including prolonged

isolation in dehumanizing conditions . . . and unsanitary conditions have . . . been found to be

cruel and unusual under contemporary standards of decency."  Id. at 363.  Further, the court

explained that "segregated detention is not cruel and unusual punishment per se, as long as the

conditions of confinement are not foul, inhuman or totally without penological justification."  Id.

at 364 (citing Smith v. Coughlin, 748 F.2d 783, 787 (2d Cir. 1984); Ford v. Board of Managers

of New Jersey State Prison, 407 F.2d 937, 940 (3d Cir. 1969); Mims v. Shapp, 399 F. Supp. 818,

822 (W.D. Pa. 1975)).  Noting that "the touchstone [of the constitutional analysis] is the health of

the inmate," the court determined that the conditions of Young's confinement worked a

deprivation of the basic necessities of human existence and thus were sufficient to satisfy the

objective prong of the analysis.  Young, 960 F.2d at 364.  Indeed, the court opined that "it would

be an abomination of the Constitution to force a prisoner to live in his own excrement for four

days."  Id. at 365.  Turning to the subjective prong of the Eighth Amendment analysis, the court

found that among other questions, it was a genuine issue whether or not "prison officials were

deliberately indifferent to Young's requests for a minimal amount of relief," and so summary judgment by the district court had been inappropriately granted.  Id.

The facts of the instant case appear similar to Young's allegations regarding the toilet facilities in his dry cell.[1]  As to the objective component of the analysis in Alvarez's case, the conditions of his confinement in isolation were similar to Young's.  Plaintiff spent three days in his isolation cell without working plumbing and with a toilet overflowing with feces, urine, and other materials.  Although the Plaintiff in this case does not claim, as Young did, that he explicitly was denied access to alternate toilet facilities, he does contend that the guards generally were unavailable to respond to his request for alternate facilities.  In support of his contention, Plaintiff points to his own deposition testimony in response to the question, "Did you ever ask the guard to go someplace to use the bathroom?"  Plaintiff's answer was, "They wouldn't come back there.  What they are saying is all a lie."  (Pl. Opp. Ex. A.)  Plaintiff further points to evidence that he contracted MRSA, specifically boils in his groin area, while in isolation to show that he lived and slept exposed to feces in his cell.

The County Defendants contest Plaintiff's version of events, alleging that Plaintiff never asked to use alternate toilet facilities and was allowed to shower at least twice (which Plaintiff admits, but the County Defendants contend provided Plaintiff an opportunity to ask for alternate toilet facilities).  The Court finds the facts of this case sufficiently similar to those in Young to find that the objective prong of the Eighth Amendment analysis is satisfied.  So too, are there genuine issues of material fact as to the knowledge and response of prison officials.  Summary

---

[1]To be sure, Young made numerous other allegations regarding his treatment in isolation, although for the purposes of this Court's analysis, we will consider the parallels to Young's and Alvarez's claims regarding toilet facilities.

judgment would thus be inappropriate on the Eighth Amendment claims.

### 3.    Plaintiff's Fourteenth Amendment Claim

Plaintiff's Fourteenth Amendment claim, insofar as it supports Plaintiff's Eighth Amendment claim, will remain before the Court, although summary judgment is appropriate as to any other Fourteenth Amendment claim.  The County Defendants move for summary judgment on Plaintiff's Fourteenth Amendment claim on two grounds: (1) that the County Defendants did not violate Plaintiff's due process rights and (2) that Plaintiff's Fourteenth Amendment claim cannot stand on its own without Plaintiff's Fifth and Eighth Amendment claims.  In response, Plaintiff contends that because there are genuine issues of material fact regarding the alleged violation of his Eighth Amendment rights, his Fourteenth Amendment claim must remain.

The County Defendants motion must fail in part because Plaintiff has pointed out that there is a genuine issue as to whether or not his Fourteenth Amendment rights were violated so long as Plaintiff's claim rests on the Eighth Amendment's prohibition against cruel and unusual punishment.  The Court will deny summary judgment as to Plaintiff's Eighth Amendment claim made pursuant to the Fourteenth Amendment, because Plaintiff's Eighth Amendment claim remains, see supra, and the Eighth Amendment is applicable to the states via the Due Process Clause of the Fourteenth Amendment.  Robinson v. California, 370 U.S. 660, 666 (1962).

Plaintiff, having failed to provide any argument to refute the County Defendants' motion with respect to a Fourteenth Amendment due process claim in and of itself, does not meet his burden on that possible claim.  See Fed. R. Civ. P. 56(e).  Accordingly, the Court will grant summary judgment for the County Defendants on Plaintiff's Fourteenth Amendment claim as it

stands alone.

### 4.    Plaintiff's § 1983 Claim

The County Defendants move for summary judgment on all of Plaintiff's claims made

pursuant to 42 U.S.C. § 1983.  They contend that Plaintiff's constitutional rights have not been

violated, nor is there evidence of a policy or custom of such violation.

"To state a claim under [42 U.S.C.] § 1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law."  West v. Atkins, 487

U.S. 42, 48 (1988).  As discussed supra, there is a genuine issue of fact as to the possible Eighth

Amendment rights violations which may form the basis of a § 1983 claim against the County

Defendants.  The Court finds that prison officials employed by Cumberland County qualify as

state actors, so Plaintiff's § 1983 claims against the individual County Defendants remain.

To hold the entity County Defendants liable under § 1983, Plaintiff must first

demonstrate the underlying constitutional violation, about which there is a genuine issue of

material fact, as discussed.  Under § 1983, however, a local government entity such as a county

"cannot be held liable solely because it employs a tortfeasor."  Monell v. New York City Dept. of

Social Services, 436 U.S. 658, 691 (1978).  "[I]t is when execution of a government's policy or

custom, whether made by its lawmakers or by those whose edicts and acts may fairly be said to

represent official policy, inflicts the injury that the government as an entity is responsible under §

1983."  Id. at 694.  To the extent that Plaintiff also makes allegations against those of the County

Defendants which are entities, the Court undertakes a Monell analysis.

The County Defendants contend that Plaintiff has no evidence of a policy of refusing

working clean toilets to inmates in Cumberland County.  So too, they contend that Plaintif has

presented no evidence of similar incidents involving other inmates.  Further, the County

Defendants point to the undisputed material fact that the two isolation units next to Plaintiff's

had working toilets to support its contention that no policy exists to satisfy the <u>Monell</u> standard.

Plaintiff's responsive submission to the Court points to the deposition testimony of Kenneth

Lamcken, who was responsible for maintenance at the Cumberland County Jail in 2005.

Lamcken testified that there were times in 2005 when toilets in isolation units were broken and

inmates were nonetheless placed in a cell with a broken toilet, where those inmates often

defecated on the floor of the cell.  (Pl. Opp. Ex. C.)  The County Defendants do not contest

Lamcken's testimony in their reply brief.  Accordingly, the Court finds that there is a genuine

issue of material fact with respect to whether there is a policy or custom in the Cumberland

County Jail which deprives inmates' constitutional right to be free from cruel and unusual

punishment.  As Plaintiff's Eighth Amendment claims against the individual County Defendants

remain, and there appears to be a genuine issue regarding a policy or custom of Eighth

Amendment rights deprivations, the Court finds no reason to grant summary judgment for the

County Defendants on Plaintiff's claims made pursuant to § 1983.

### 5. Plaintiff's § 1985 Claim

The County Defendants move for summary judgment on Plaintiff's claim made pursuant

to 42 U.S.C. § 1985(3).  They argue that Plaintiff has not shown evidence sufficient to make out

such a claim, in particular providing no evidence of a conspiracy whatsoever, particularly not a

conspiracy intended to inhibit Plaintiff's equal protection rights.[2]  Plaintiff contends that there is a genuine issue as to whether or not a conspiracy existed that prevented him from enjoying his civil rights, as evidenced by his placement in the isolation cell without a functioning toilet. Plaintiff avers that the conspiratorial aspect of his treatment arises out of a policy of placing other inmates in the same or similar conditions.

To state a claim under 42 U.S.C. § 1985(3), Plaintiff must allege, among other things, a conspiracy motivated by a racial or class based discriminatory animus designed to deprive him of equal protection of the laws. Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997) (citing Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)).  Plaintiff has provided no specific allegations of such discrimination, nor any evidence to support such a claim.  He has simply not alleged any class or race-based motive which would support a § 1985(3) claim.  Accordingly, the Court will grant summary judgment for the County Defendants on Plaintiff's claims made pursuant § 1985(3).

**B.     Prison Health Services' Motion[3]**

PHS was contracted to provide health care management and staffing for the Cumberland County Jail at the time of the events alleged in Plaintiff's Complaint.   PHS contends that it did not employ nurses to provide direct care to inmates, but rather that any nurses who did so were employed by Cumberland County.  (PHS Br. at 1.)  The Agreement between Cumberland County and the regional office of PHS reflects that PHS provided "physician and administrative

---

[2]Although the County Defendants also point out that there is no evidence of a conspiracy to deprive Plaintiff of his voting rights, Plaintiff makes clear in his opposition brief that his right to vote is not the basis of this claim.

[3]Plaintiff previously agreed to dismiss Defendant Betty Gambrell from this matter; Gambrell was a health services administrator at Cumberland County Jail.

personnel" at the Cumberland County Jail; there is no mention of PHS providing nurses. (PHS Exs. B, C.)

### 1.   Plaintiff's § 1983 Claim

PHS moves for summary judgment on Plaintiff's Eighth Amendment claims against it filed pursuant to 42 U.S.C. § 1983.[4]  PHS grounds its motion on Plaintiff's lack of evidence that PHS violated his constitutional rights and upon the legal argument that 42 U.S.C. § 1983 does not permit a claim based solely upon vicarious liability.  Plaintiff did not oppose the instant motion.

"To state a claim under [42 U.S.C.] § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West, 487 U.S. at 48. Because a physician under contract with a state prison acts under the color of state law when he treats an inmate, the Court finds that PHS was also acting under color of state law when it provided medical personnel to treat inmates at the Cumberland County Jail  Id.  Plaintiff may establish liability by showing that PHS had a policy or custom that caused the civil rights violations he alleges.  Monell, 436 U.S. at 694.  Thus, there can be no entity liability unless there is an underlying constitutional violation.

Where § 1983 claims are grounded on claims that medical treatment fell below constitutional standards, an inmate must show that the defendant was deliberately indifferent to

---

[4]The Court notes that PHS does not specify that its motion only seeks summary judgment on Plaintiff's Eighth Amendment claims.  It appears to the Court, however, that PHS has not addressed Plaintiff's Fifth and Fourteenth Amendment claims, nor for that matter Plaintiff's § 1985 claims, in the instant motion.  Accordingly, the Court only considers PHS's motion with respect to Plaintiff's Eighth Amendment claims made pursuant to § 1983.

his serious medical needs.  See Estelle v. Gamble, 429 U.S. 97; Rouse, 182 F.3d at 197.

"Deliberate indifference" exists "where [a] prison official: (1) knows of a prisoner's need for

medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment

based on a non-medical reason; or (3) prevents a prisoner from receiving needed or

recommended medical treatment." Rouse, 182 F.3d at 197.  Further, claims of negligence or

malpractice are not sufficient to establish "deliberate indifference."  Id.

PHS contends that Plaintiff's only evidence regarding its treatment of Plaintiff comes in

the form of an expert report by Dr. John Kirby.  PHS notes that Dr. Kirby, Plaintiff's own expert,

mentions PHS employees when it says that, "Once detected, Mr. Alvarez's wounds were treated

appropriately by his physicians," although "wound care was neglected by the prison nurses."

(PHS Ex. E at 7.)[5]  The report further states that when Plaintiff discovered the boils on his

abdomen and upper legs, "the prison physician lanced [the] boils."  (PHS Ex. E at 3; PHS Ex. F

at 3.)  PHS also argues that there is no evidence that PHS was responsible for the cleaning and

sanitation of the inmates' housing, a focus of both of Dr. Kirby's reports.

The Court finds that PHS has met its burden, that Plaintiff's own expert report shows that

PHS' physicians did not act with deliberate indifference to Plaintiff's serious medical need and

that there is no evidence that PHS is responsible for Cumberland County Jail's failure to

adequately prevent infection.  PHS' contract with Cumberland County reinforces the notion that

cell cleaning and sanitation were not its responsibility.  There is thus no evidence before the

Court which shows a genuine issue of material fact as to PHS' alleged Eighth Amendment

_____

[5]The Court has taken into consideration both versions of the Kirby report submitted by
PHS in support of its motion.

violations.  Plaintiff, having not opposed the instant motion, has not met his burden to show that there is a genuine issue for trial.  Accordingly, the Court will grant summary judgment for PHS on Plaintiff's Eighth Amendment claims made pursuant to § 1983.

### 2.    Plaintiff's Negligence Claim

PHS also moves for summary judgment on Plaintiff's negligence claims[6], arguing that Dr. Kirby's report concludes that the medical care provided to Plaintiff was appropriate.  Plaintiff's medical malpractice claim fails and must be dismissed.

Plaintiff's negligence claim against PHS is, in part, a medical malpractice claim requiring expert testimony establishing (1) the applicable standard of care; (2) a deviation from that standard of care; and (3) that the deviation caused the injury.  See Teilhaber v. Greene, 727 A.2d 518 (N.J. Super. Ct. App. Div. 1999).  The facts of this case, as presented to the Court, do not show that there is a genuine issue as to Plaintiff's treatment by PHS.  The physicians who treated him at the Cumberland County Jail provided medical care that, according to Plaintiff's own expert, was appropriate.  Because Plaintiff has not responded, and there are no facts currently before the Court to support the bare allegations of medical malpractice in the Complaint, PHS is entitled to summary judgment Plaintiff's medical malpractice claims against it.

## IV.    CONCLUSION

Based upon the foregoing, the Court will GRANT summary judgment for the County Defendants on Plaintiff's Fifth Amendment claims, Plaintiff's claims made pursuant § 1985(3),

---

[6]The Court notes that PHS does not specify that its motion only seeks summary judgment on Plaintiff's medical malpractice claims of negligence.  It appears to the Court, however, that PHS has not addressed in the instant motion Plaintiff's claims that PHS was negligent in other respects.  Accordingly, the Court only considers PHS's motion as to Plaintiff's medical malpractice claims.

16

and Plaintiff's Fourteenth Amendment claim to the extent that it alleges a violation of Plaintiff's

Fourteenth Amendment right to due process.  Further, the Court will DENY summary judgment

for the County Defendants on Plaintiff's Eighth Amendment claims made pursuant to the

Fourteenth Amendment and 42 U.S.C. § 1983.  The Court will GRANT summary judgment for

PHS on Plaintiff's Eighth Amendment claims made pursuant to § 1983 and on Plaintiff's

medical malpractice claims against PHS.  The accompanying Order shall issue today.


Dated:_____3-18-09_____                        ___/s/ Robert B. Kugler_____
                                                   ROBERT B. KUGLER
                                                   United States District Judge